**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CASE NO.:**

SHERRY TRUNZO,

       Plaintiff,

v.

LAKELAND REGIONAL MEDICAL CENTER, INC.,
a Florida Not For Profit Corporation,

       Defendant.
_____/

## COMPLAINT AND DEMAND FOR A JURY TRIAL WITH DECLARATORY RELEIF REQUESTED AND INJUNCTIVE RELIEF REQUESTED

Plaintiff, SHERRY TRUNZO ("Ms. Trunzo" or "Plaintiff") files this Complaint against Defendant, LAKELAND REGIONAL MEDICAL CENTER, INC. ("LRMC" or "Defendant"), and states as follows:

## INTRODUCTION

1.      Plaintiff brings this action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), and Chapter 760 of the Florida Civil Rights Act ("FCRA"), and for violation of the Florida Whistleblower Act, Section

448.102(3), Florida Statutes ("FWA") to recover from Defendant back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, front pay, declaratory relief, compensatory damages, punitive damages, reasonable attorneys' fees and costs, and any other damages permitted by law.

## JURISDICTION, VENUE AND PARTIES

2.     This Court has original jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331, as they arise under 42 U.S.C. § 12101, *et seq.*

3.     This Court also has supplemental jurisdiction over Plaintiff's FCRA and FWA claims, as they arise out of the same operative facts and circumstances as her ADA claims.

4.     At all times relevant hereto, Plaintiff was an employee of Defendant.

5.     Plaintiff worked for Defendant in Polk County, Florida, and this venue is therefore proper.

6.     Defendant is a Florida not for profit corporation that is located and does business in Polk County, Florida, and is therefore within the jurisdiction of the Court.

7.     Plaintiff is a disabled female. At all times material, Plaintiff was protected during her employment with Defendant by the FCRA and ADA because:

a.     Plaintiff was a disabled or "perceived as disabled" employee who suffered discrimination and harassment because of her disability or "perceived disability" by Defendant; and

b.     Plaintiff was retaliated against and suffered adverse employment action and was subjected to an increasingly hostile work environment as a result of her disability or "perceived disability."

8.     Defendant was at all times an "employer" as envisioned by the ADA as well as the FCRA.

9.     Defendant, at all times material to this Complaint, employed ten (10) or more employees, and is therefore a covered employer as defined by the FWA.

10.     At all times material hereto, Plaintiff was an "employee" within the meaning of the FWA.

11.     At all times material hereto, Defendant was Plaintiff's "employer" within the meaning of the FWA.

## CONDITIONS PRECEDENT

12.     On or around July 10, 2020, Plaintiff dual-filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR") alleging disability discrimination and retaliation against Defendant.

13.     More than 180 days have passed since the filing of the Charge of Discrimination.

14.     On February 26, 2021, Plaintiff received the EEOC's Notice of Right to Sue against Defendant, giving Plaintiff the right to bring a civil action on her claims within 90 days of her receipt of the same.

15.     Plaintiff timely files this action within the applicable period of limitations against Defendant.

16.     All conditions precedent to this action have been satisfied and/or waived.

## FACTUAL ALLEGATIONS

17.     Ms. Trunzo worked for LRMC as a Registered Nurse, from January 28, 1985, until her termination on May 20, 2020.

18.     During her long tenure with LRMC, Ms. Trunzo enjoyed consistently good performance reviews, with no performance, attendance, or tardiness issues.

19.     Unfortunately, Ms. Trunzo is an immune-compromised survivor of breast cancer, which is considered a protected disability under the ADA/FCRA.

20.     In March 2020, as reports of the outbreak were escalating, Ms. Trunzo voluntarily chose to wear a Level 1 mask to protect herself from contracting the virus and to safeguard others around her.

21.     In response to wearing her mask, Nursing Manager, Verletta Jackson ("Ms. Jackson"), specifically told Ms. Trunzo not to wear a mask, as it would "scare patients," and lead them to possibly cancel or postpone elective surgery.

22.     Ms. Trunzo objected to this, disclosed that she was immune-compromised due to her disability, and pleaded with Ms. Jackson for the reasonable accommodation of wearing a mask, but her request was initially refused.

23.     After many objections to Ms. Jackson's dangerous mask prohibition, by mid-April 2020, Ms. Jackson reluctantly granted Ms. Trunzo permission to wear a mask during her shifts and was approved for a medical waiver which would allow her to take a leave of absence, if needed.

24.     Unfortunately, at this time, Ms. Trunzo was the only employee who wore a mask, which has a limited efficacy.

25.     Later that month, in April of 2020, LRMC began issuing one Level 1 mask per week to each employee but refused to issue the Personal Protective Equipment (PPE) that would protect hospital staff from COVID-19 positive patients.

26.     Furthermore, it was not until the end of April that LRMC began mandating its patients to wear a mask.

27.     These lackluster measures far fall below of what the law requires and endangered both patients and staff, specifically, Occupational Safety and Health Administration's ("OSHA's") General Duty Clause requires employers to provide a work environment "free from recognized hazards that are causing or are likely to cause death or serious physical harm."

28.     The COVID-19 virus, an airborne pathogen which can cause respiratory failure and death, is certainly a recognized hazard under OSHA.

29.     As such, since the outbreak, Ms. Trunzo repeatedly objected to LRMC's Ms. Jackson and Assistant Directors, Cateria Davis ("Ms. Davis"), and Sheena Butts ("Ms. Butts") regarding the lack of proper safety measures.

30.     As the outbreak progressed, LRMC kept performing allegedly "urgent" surgeries without testing its prospective patients for COVID-19.

31.     By May 5, 2020, LRMC had an average of 15-20 patients each day coming into its facility who had not received the results of their COVID-19 tests and as such, placed other patients and staff in danger of contracting the virus.

32.     On May 18, 2020, Ms. Trunzo noticed that she was scheduled to see a patient who had not undergone any testing on the prior day to ensure the patient did not suffer from COVID-19.

33.     Scared for her health and wellbeing, Ms. Trunzo objected to Ms. Jackson, who refused to postpone the patient's surgery (which was later found not to be urgent) and ordered Ms. Trunzo to treat the patient regardless of their COVID-19 status.

34.     The next day, the above-mentioned patient was tested at LRMC and tested positive for COVID-19 and their surgery was postponed without issue.

35.     Ms. Trunzo brought her concerns to Ms. Butts, who arrived at the unit with Dr. Daniel Haight ("Dr. Haight"), an infectious disease specialist.

36.     Shockingly, both Dr. Haight and Ms. Butts dismissed Ms. Trunzo's concerns, telling her that the patient was "not showing symptoms."

37.     Ms. Trunzo pushed back on this assertion, informing her managers that asymptomatic individuals could still pass on the virus, and that only employees conducting COVID-19 tests had proper PPE to prevent infection.

38.     Due to this, and pursuant to CDC and LRMC procedures, Ms. Trunzo asked to be quarantined and tested, but her managers denied this request.

39.     However, that same day Ms. Davis met with Ms. Trunzo and informed her that she should indeed leave work premises and apply for a leave of absence ("LOA") on the following day pursuant to her approved medical waiver.

40.     This accommodation would have imposed no undue hardship on Defendant.

41.     On or around May 20, 2020, Ms. Trunzo called Ms. Jackson for additional information on the LOA procedure and informed her that, pursuant to LRMC guidelines, she was due to be quarantined and afforded counseling.

42.     Shockingly, Ms. Jackson asked Ms. Trunzo if she had resigned from her position, which our client denied.

43.     A few hours later, Ms. Jackson called Ms. Trunzo and terminated her employment with LRMC.

44.     When Ms. Trunzo objected to the unlawful termination, Ms. Jackson responded by saying, "you have been complaining for a while. You should have seen this coming."

45.     Such a discriminatory, and retaliatory termination is exactly the type of adverse employment action that the ADA, FCRA, and the FWA were intended to prevent.

46.     In reality, Defendant's termination of Ms. Trunzo stemmed from its discriminatory animus toward her very recent request for accommodation under the ADA/FCRA, and her recent objections to LRMC's actions that she reasonably believed to be in violation of a rule, regulation, or law.

47.     The timing of Plaintiff's termination makes the causal connection between her request for reasonable accommodation under the ADA/FCRA, her objections regarding disability discrimination, and her objections to what she reasonably believed to be violations of rule, regulation or law, and her termination sufficiently clear.

48.     The person to whom Plaintiff voiced her objections to Defendant's violations of law was a decision-maker in terms of retaliating against Plaintiff by terminating her employment.

49.     Plaintiff's objections were considered protected activity pursuant to Fla. Stat. § 448.102(3), and qualified Ms. Trunzo as a whistleblower under the law.

50.     In *Aery v. Wallace Lincoln–Mercury, LLC*, 118 So.3d 904, 916 (Fla. 4th DCA 2013), the Court made clear that it is unlawful to adversely affect an employee for engaging in the "protected conduct" of objecting to, or refusing to partake in, unlawful activity, or what the employee reasonably believes to be illegal conduct.  *See id.*  at 916 (To establish a violation of the FWA, an employee must establish that: (1) he objected to or refused to participate in an illegal activity, policy, or practice or what he reasonably believed to be an illegal activity, policy, or practice; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally linked to his objection or refusal).

51.     Plaintiff was terminated in direct retaliation for reporting and objecting to Defendants' unlawful actions, or what she reasonably believed to be unlawful actions, in violation of Section 448.102 (3), Florida Statutes.  *See Aery*, 118 So. 3d at 916.

52.     The facts surrounding Plaintiff's termination also create a strong inference of disability discrimination in violation of the ADA/FCRA.

53.     Defendant was aware of Plaintiff's ADA/FCRA-protected disability and need for accommodation.

54.     An employer is required to provide its disabled employees with a reasonable accommodation, if that reasonable accommodation would allow that employee to perform the essential functions of her job, unless doing so would impose an undue hardship. *Smith v. Avatar Properties, Inc.*, 714 So. 2d 1103, 1107 (Fla. 5th DCA 1998).

55.     Ms. Trunzo is an individual with a disability who, with minimal reasonable accommodation, was fully capable of performing the essential functions of her job as a Registered Nurse.

56.     Allowing Ms. Trunzo to utilize a brief period of unpaid leave to quarantine without penalty or negative repercussions, such as termination, would have been a reasonable accommodation.

57.     By reason of the foregoing, Defendant's actions, and non-actions, affected the "terms, conditions or privileges" of Plaintiff's employment as envisioned by the ADA and the FCRA.

58.     "Reasonable accommodation" under the ADA may include "job restructuring, part-time or modified work schedules, reassignment to a vacant

position, acquisition or modification of equipment or devices . . .and other similar accommodations." 42 U.S.C. § 12111(9)(B).

59.     Defendant, however, being well aware of Plaintiff's condition, discriminated and retaliated against Plaintiff for requesting reasonable accommodation, and for objecting to disability discrimination.

60.     In short, despite the availability of reasonable accommodation under the ADA and FCRA, Defendant discriminated against Ms. Trunzo based solely upon her disability.

61.     At all times material hereto, Plaintiff was ready, willing, and able to perform her job duties and otherwise qualified for her position, with "reasonable accommodation."

62.     Pleading in the alternative, Defendant perceived Plaintiff as being "disabled," and therefore unable to perform the essential functions of her position, despite the fact that Plaintiff could perform same with reasonable accommodation.

63.     Pleading in the alternative, Plaintiff's impairment did not substantially limit a major life activity but was treated by Defendant as if it did.

64.     Pleading in the alternative, Plaintiff's medical condition constituted an impairment that limited a major life activity only because of Defendant's attitude toward the impairment.

65.     Pleading in the alternative, Plaintiff had no impairment, whatsoever, but was treated by Defendant as having a disability as recognized by the ADA/FCRA.

66.     Plaintiff was a disabled individual, or otherwise perceived as disabled by Defendant, during her employment.  Therefore, she is protected class member as envisioned by the ADA and the FCRA.

67.     Plaintiff suffered sufficiently severe and pervasive treatment, and ultimately termination, because of her disability and/or "perceived disability."

68.     Any other reason given for Plaintiff's termination is a pretext, designed to cover up disability discrimination and retaliation.

69.     Defendant did not have a good faith basis for its actions.

70.     Defendant did not have a legitimate, non-retaliatory reason, for its actions.

71.     As a result of Defendant's illegal conduct, Plaintiff has suffered damages, including loss of employment, wages, benefits, and other remuneration to which she is entitled.

72.     Plaintiff has retained the law firm of RICHARD CELLER LEGAL, P.A., to represent her in the litigation and has agreed to pay the firm a reasonable fee for its services.

## COUNT I
## DISCRIMINATION UNDER THE ADA BASED ON DISABILITY

73.     Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1, 2, 4 through 8, 12 through 48, and 52 through 72, above.

74.     The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against disability discrimination under the ADA.

75.     The discrimination to which Plaintiff was subjected was based on her disabilities and/or "perceived disabilities."

76.     The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

77.     Plaintiff has suffered damages as a result of Defendant's illegal conduct toward her.

78.     The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

79.     Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 12205.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## COUNT II
## DISCRIMINATION UNDER THE FLORIDA CIVIL RIGHTS ACT
## BASED ON DISABILITY

80.     Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1, 3 through 8, 12 through 48, and 52 through 72, above.

81.     The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against disability discrimination under the FCRA, Chapter 760, Florida Statutes.

82.     The discrimination to which Plaintiff was subjected was based on her disabilities/handicaps, or "perceived disabilities."

83.     The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

84.     The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

85.     Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to section 760.11(5), Florida Statutes.

86.     Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## COUNT III
## RETALIATION UNDER THE ADA BASED ON DISABILITY

87.     Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1, 2, 4 through 8, 12 through 48, and 52 through 72, above.

88.      Plaintiff was terminated within close temporal proximity of her objections to Defendant that she felt she was being discriminated against based on her disability, and her request for reasonable accommodation.

89.     Plaintiff's objections, and request for reasonable accommodation, constituted protected activity under the ADA.

90.     Plaintiff was terminated as a direct result of her objections to what she reasonably believed to be disability discrimination, and her request for reasonable accommodation.

91.     Plaintiff's protected activity, and her termination, are causally related.

92.     Defendant's stated reasons for Plaintiff's termination are a pretext.

93.     The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

94.     The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it and others from such conduct in the future.

95.     Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 12205.

96.     Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## COUNT IV
## RETALIATION UNDER THE FLORIDA CIVIL RIGHTS ACT
## BASED ON DISABILITY

97.   Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1, 3 through 8, 12 through 48, and 52 through 72, above.

98.   Plaintiff was terminated within close temporal proximity of her objections to Defendant that she felt she was being discriminated against based on her disability, and her request for reasonable accommodation.

99.   Plaintiff's objections, and request for reasonable accommodation, constituted protected activity under the FCRA.

100.   Plaintiff was terminated as a direct result of her objections to what she reasonably believed to be disability discrimination, and her request for reasonable accommodation.

101.   Plaintiff's protected activity, and her termination, are causally related.

102.   Defendant's stated reasons for Plaintiff's termination are a pretext.

103.   The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation,

inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

104.    The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it and others from such conduct in the future.

105.    Plaintiff is entitled to recover her reasonable attorneys' fees and litigation expenses pursuant to Section 760.11(5), Florida Statutes.

106.    Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant which have caused, and continue to cause, irreparable harm.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other relief as is deemed proper by this Court.

## COUNT V
## FLORIDA'S PRIVATE WHISTLEBLOWER ACT – UNLAWFUL RETALIATION

107.    Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1, 3 through 6, 9 through 11, 17 through 51, and 68 through 72, above.

108.   On October 28, 2019, Defendant illegally terminated Plaintiff from her employment in violation of Section 448.102(3), Florida Statutes.

109.   Plaintiff was retaliated against and terminated in violation of Section 448.102(3), Florida Statutes, for objecting to illegal activity, or what she reasonably believed to be illegal activity, being conducted by Defendant, or for refusing to participate in same.

110.   Plaintiff objected to a violation of a law, rule, or regulation, or what she reasonably believed to be a violation of a law, rule, or regulation, or refused to participate in same, and was terminated as a direct result of same, which constitutes a violation of the FWA.

111.   As a result of Defendant's intentional, willful and unlawful actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost benefits, lost employment status, as well as humiliation, pain and suffering, and other monetary and non-monetary losses.

**WHEREFORE**, Plaintiff requests a judgment in his favor and against Defendant for her actual and compensatory damages, including, but not limited to, front pay, back pay, and emotional distress damages, as well as her costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as

is deemed proper by this Court.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this _____ day of May 2021.

Respectfully Submitted,

**By:** *<u>/s/ Noah Storch</u>*
Noah E. Storch, Esq.
Florida Bar No. 0085476
 RICHARD CELLER LEGAL, P.A.
10368 W. SR 84, Suite 103
Davie, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-mail: noah@floridaovertimelawyer.com